Filed 11/17/23  P. v. Valle CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B322059 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA040676) |
| v. | |
| LUIS ALONZO VALLE et al., | |
| Defendants and Appellants. | |

APPEAL from postjudgment orders of the Superior Court of Los Angeles County.  Stephen A. Marcus, Judge, and Eleanor J. Hunter, Judge.  Affirmed.

Elizabeth K. Horowitz, under appointment by the Court of Appeal, for Defendant and Appellant Luis Alonzo Valle.

Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant Raul Guzman.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Shezad H.

Thakor, and Kristen J. Inberg, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Luis Alonzo Valle and Raul Guzman appeal the denial of their petitions for resentencing under Penal Code[1] section 1172.6 (former § 1170.95)[2] at the prima facie stage.  Appellants contend that because the instructions given permitted the jury to convict on a theory of imputed malice, the superior court erred in finding that appellants did not make a prima facie case for relief under section 1172.6.  Appellant Guzman also contends that the superior court committed prejudicial error by conducting the prima facie hearing under section 1172.6, subdivision (c) in Guzman's absence without a waiver of his right to personal presence at the hearing.  We disagree and affirm.

## FACTUAL BACKGROUND[3]

Shortly after midnight on June 19, 1991, codefendant Reyes Saul Aguilar approached Armando Lopez and Raul Ortega, while appellants Valle and Guzman were hidden nearby. Pointing a small gun at Ortega's chest, Aguilar demanded to know where Ortega was from.  Ortega responded, "I'm Nardo

_____

[1] Undesignated statutory references are to the Penal Code.

[2] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text.  (Stats. 2022, ch. 58, § 10.)

[3] The underlying facts are summarized for context from this court's unpublished opinion in the defendants' direct appeal. (*People v. Valle et al.* (Dec. 8, 1994, B073825 [nonpub. opn.].)

from Third Street." Guzman then emerged also holding a gun, and asked Ortega, "What's up Nardo?" Ortega responded, "What's up, Ese?" The men began to argue and Valle emerged from hiding, holding a shotgun. As Valle approached Ortega, Ortega said, "If you are gonna do it, just do it." Valle fired the shotgun at Ortega, striking him below the hip. Aguilar and Guzman then fired their guns at Ortega several times from a distance of two or three feet. Valle fired another round in Ortega's direction, before he, Guzman and Aguilar ran away. (*People v. Valle et al., supra,* B073825.)

Valle, Guzman and Aguilar matched the descriptions of the assailants given by Ortega's companion and were arrested shortly after the shooting. Police recovered a .32-caliber handgun they had seen Aguilar drop before his arrest. (*People v. Valle et al., supra,* B073825.)

Ortega died as a result of his wounds. A bullet recovered from his chest had been fired from the .32-caliber weapon dropped by Aguilar. Shotgun wadding recovered from Ortega's clothing and the dispersal of the shotgun pellets indicated the shotgun had been fired from a distance of six to eight feet from the victim. Police recovered three .32-caliber casings, one spent shotgun shell, one live shotgun shell, and many bullet fragments from the scene of the shooting. (*People v. Valle et al., supra,* B073825.)

## PROCEDURAL BACKGROUND

In 1993, a jury convicted appellant Valle and codefendant Aguilar of first degree murder, and appellant Guzman of second degree murder. (§ 187, subd. (a).) As to each defendant, the jury found true the allegation that the defendant had personally used a firearm (§ 12022.5), and a principal in the offense was armed

3

with a firearm (§ 12022, subd. (a)(1).)  Valle was sentenced to 25 years to life, plus five years for the personal firearm use enhancement, and Guzman was sentenced to 15 years to life, plus five years for the personal firearm use enhancement.  This court affirmed the judgments against all three defendants in an unpublished opinion filed December 8, 1994.

On December 8, 2021, appellant Valle filed a section 1172.6 petition for resentencing, and appellant Guzman filed his petition in January 2022.[4]  After appointment of counsel, briefing and an opportunity for argument, the superior court denied Valle's petition on June 16, 2022.  After reviewing the jury instructions given at trial, the court determined that Valle's murder conviction was not based on a felony-murder theory or the natural and probable consequences doctrine.  Accordingly, Valle had failed to make a prima facie showing of eligibility for relief under section 1172.6.

As for Guzman's resentencing petition, following appointment of counsel, briefing and an opportunity for argument, the superior court denied Guzman's section 1172.6 petition on the ground that Guzman had not made a prima facie case demonstrating eligibility for relief.

---

[4] Appellants had previously filed petitions for resentencing, which the superior court summarily denied without appointment of counsel.  This court affirmed the denial of appellant Guzman's petition.  (*People v. Guzman* (Aug. 3, 2020, B297087 [nonpub. opn.].)  Appellants' renewed petitions were filed after the California Supreme Court held in *People v. Lewis* (2021) 11 Cal.5th 952, 970 (*Lewis*) that a superior court must appoint counsel, if requested, for all facially sufficient petitions filed under section 1172.6.

## DISCUSSION

### I. Appellants Are Ineligible for Relief Under Section 1172.6 as a Matter of Law

Appellants contend the superior court denied their resentencing petitions at the prima facie stage in error. We disagree. Based on the jury instructions given at trial and the jury's verdicts and findings, the superior court properly ruled that appellants were not convicted under any theory that would entitle them to relief under section 1172.6. Accordingly, the superior court properly denied the resentencing petitions at the prima facie stage.

#### A. *Proceedings in the superior court*[5]

##### *1. The hearing on appellant Valle's petition*

At the outset of the hearing, the superior court observed the matter was at the " 'prima facie phase,' " and announced it had "read all the documents," including the parties' briefs. Counsel submitted on the briefing. The court ruled that Valle had failed to carry his burden to make a prima facie showing that he is entitled to relief under section 1172.6, explaining that in order to be eligible for relief, "petitioner must, at a minimum, show he's been convicted under either a natural and probable consequence theory of murder or a felony murder theory." But given the absence of jury instructions on the natural and probable consequence doctrine or a felony-murder theory, the court determined the prosecution did not pursue a murder

---

[5] Appellants' petitions for resentencing under section 1172.6 were heard separately by two different judges of the superior court. Judge Stephen A. Marcus heard and denied appellant Valle's petition, and appellant Guzman's petition was heard and denied by Judge Eleanor J. Hunter.

5

conviction under either theory, and Valle did not establish eligibility for relief under section 1172.6. The court rejected the argument that the trial court's giving of CALJIC No. 3.00[6] established that the natural and probable consequences doctrine was presented to the jury as a theory of the murder.

The superior court cited two cases in support of its decision. (*People v. Mancilla* (2021) 67 Cal.App.5th 854, and *People v. Soto* (2020) 51 Cal.App.5th 1043.) The court also cited the facts of the offense as supporting its ruling, and emphasized the jury's finding that Valle had personally used a firearm, which indicated Valle had the intent to kill even though it was a bullet from another gun that killed the victim. The court stressed, however, that the "obvious reason" for its conclusion that Valle was ineligible for relief was "the lack of jury instructions" on felony murder and natural and probable consequences theories.

Suggesting the superior court had engaged in impermissible factfinding, defense counsel requested clarification about what the court was relying on in making its ruling. The court responded that it was relying on the absence of jury instructions on the only two theories relevant to a section 1172.6 petition—felony murder and natural and probable consequences.

---

[6] It appears the superior court misspoke when it referred to CALJIC No. 3.00. That instruction defines principals, and contains no reference to natural and probable consequences. Nor does CALJIC No. 3.01, which defines aiding and abetting. Only CALJIC No. 8.11, defining implied malice, contains a reference to the "natural consequences of [an] act" being dangerous to human life.

*2. The hearing on appellant Guzman's petition*

Appellant Guzman was not present at the hearing on his petition, but appeared through counsel. The parties submitted on the briefing.

The superior court observed that the matter was "at the prima facie phase," and stated it had reviewed the record of conviction, jury instructions, verdict, and "the appellate opinion."[7] Based on its review of the record, the court noted that "there was no felony murder instruction given, [and] there was no natural and probable consequence[s] instruction given." The court stated that the jury found appellant Guzman guilty of second degree murder and also found true the allegation that Guzman had personally used a firearm.

In light of these facts, the superior court concluded that appellant Guzman was not convicted under either a felony-murder theory or the natural and probable consequences doctrine. Accordingly, the court declared Guzman to be "legally ineligible for relief under [section 1172.6]" and denied the petition for resentencing.

**B. *Applicable legal principles***

The Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) in 2018, effectively abolishing the natural and probable consequences doctrine in cases of murder and limiting the application of the felony-murder doctrine. (Stats. 2018, ch. 1015, § 1, subd. (f); *Lewis, supra,* 11 Cal.5th at p. 957.) With one narrow exception (§ 189, subd. (f)), Senate Bill No. 1437

---

[7] The superior court did not specify which appellate opinion it had reviewed—*People v. Valle et al., supra,* B073825, or *People v. Guzman, supra*, B297087.

7

effectively eliminated murder convictions premised on any theory of imputed malice—that is, any theory by which a person can be convicted of murder for a killing committed by someone else, such as felony murder or the natural and probable consequences doctrine—unless the People also prove that the nonkiller defendant personally acted with the intent to kill or was a major participant who acted with reckless disregard to human life. (§§ 188, subd. (a)(3) & 189, subd. (e).)  Specifically, the Legislature amended section 188 to require that, when the felony-murder rule does not apply, a principal in the crime of murder "shall act with malice aforethought" and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).)

Senate Bill No. 1437 also enacted former section 1170.95 (now § 1172.6), which established a procedure for vacating the murder convictions of defendants who could no longer be convicted of murder because of the amendments to sections 188 and 189.  (Stats. 2018, ch. 1015, § 4; *Lewis*, *supra*, 11 Cal.5th at pp. 957, 959, 971; *Gentile*, *supra*, 10 Cal.5th at p. 843.)  Section 1172.6, subdivision (c) requires the court to appoint counsel when requested upon the filing of a properly pleaded petition for resentencing.  (*Lewis*, at pp. 963, 966.)  The court must then conduct a prima facie analysis with briefing to determine the petitioner's eligibility for relief, and, if the requisite prima facie showing is made, issue an order to show cause.  (§ 1172.6, subd. (c); *Lewis*, at p. 971; *People v. Nieber* (2022) 82 Cal.App.5th 458, 469–470.)

Effective January 1, 2022, Senate Bill No. 775 amended section 1172.6 to expand its coverage to murder convictions

8

"under the natural and probable consequences doctrine *or other theory under which malice is imputed to a person based solely on that person's participation in a crime*." (§ 1172.6, subd. (a), as amended by Stats. 2021, ch. 551, § 2, new text italicized; *People v. Langi* (2022) 73 Cal.App.5th 972, 978 (*Langi*).) A petitioner is ineligible for section 1172.6 relief as a matter of law if, for example, the jury instructions show that jurors were not instructed on any theory of liability for murder that allowed malice to be imputed to the defendant. (*People v. Cortes* (2022) 75 Cal.App.5th 198, 205 (*Cortes*).) A petitioner is also ineligible for relief if the record of conviction shows that his or her conviction was based on a theory of liability that remains valid under Senate Bill 1437. (*Gentile, supra,* 10 Cal.5th at p. 850 ["notwithstanding Senate Bill 1437's elimination of natural and probable consequences," implied malice remains a valid theory of second degree murder]; *Cortes*, at p. 205 [same]; see also *People v. Medrano* (2021) 68 Cal.App.5th 177, 182–183 [a defendant convicted of conspiracy to murder ineligible for § 1172.6 relief].)

We review de novo the superior court's prima facie determination that a petitioner is ineligible for section 1172.6 relief as a matter of law. (*People v. Coley* (2022) 77 Cal.App.5th 539, 545; *People v. Williams* (2022) 86 Cal.App.5th 1244, 1251 (*Williams*).)

**C. *The superior court properly denied appellants' petitions at the prima facie stage because appellants are ineligible for relief under section 1172.6 as a matter of law***

Appellants contend that the jury could have convicted them of murder on a theory of imputed malice. But the jury in this case was not instructed on *any* theory of liability for murder that allowed malice to be imputed to appellants Valle or Guzman.

(See *Cortes, supra*, 75 Cal.App.5th at p. 205.) Nevertheless, appellants focus on isolated phrases in the jury instructions to argue that the instructions given in this case permitted the jury to impute malice to them. Reading the instructions as a whole, as we must (*People v. Burton* (2018) 29 Cal.App.5th 917, 925), we conclude the only theory on which appellants' jury was instructed was direct aiding and abetting, which does not qualify for section 1172.6 relief.

Specifically, the trial court instructed with CALJIC No. 8.10 that murder requires malice aforethought. The court explained via CALJIC No. 8.11 that malice may be express or implied: express "when there is manifested an intention unlawfully to kill a human being"; and implied when "1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for human life."

The trial court instructed the jury that all principals in a crime are "equally guilty" of that crime. (CALJIC No. 3.00.) CALJIC No. 3.00 defined principals as "[t]hose who directly and actively commit the act constituting the crime," as well as "[t]hose who aid and abet the commission of the crime." Reading CALJIC No. 3.01, the court further instructed that "[a] person aids and abets the commission or attempted commission of a crime when he or she, [¶] 1. with knowledge of the unlawful purpose of the perpetrator and [¶] 2. with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime." (CALJIC No. 3.01.)

10

The trial court also instructed that "[t]he word 'defendant' applies equally to each defendant." (CALJIC No. 1.11.) Finally, two other instructions ensured that in order to convict any defendant as an aider and abettor of the murder, the jury had to consider each defendant's guilt separately from the others' (CALJIC No. 17.00 ["You must decide separately whether each of the defendants is guilty or not guilty"]), and also find that each defendant himself harbored the requisite intent to kill (CALJIC No. 3.31 ["Unless such specific intent exists the crime to which it relates is not committed"]).

In order to convict, these instructions required the jury to find that each defendant separately committed murder—whether as the actual killer or as a direct aider and abettor—with express or implied malice. " '[T]o be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.' " (*People v. Reyes* (2023) 14 Cal.5th 981, 991, quoting *People v. Powell* (2021) 63 Cal.App.5th 689, 713 (*Powell*).) Thus, aiding and abetting implied malice murder is a theory of murder based on the aider and abettor's own mental state; it does not rely on imputed malice. (*People v. Silva* (2023) 87 Cal.App.5th 632, 639; *People v. Schell* (2022) 84 Cal.App.5th 437, 443–444; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 390–391; *People v. Vargas* (2022) 84 Cal.App.5th 943, 955.)

Appellants contend that the "equally guilty" language in CALJIC No. 3.00 allowed the jury to convict them of murder "without ever determining that [they] personally acted with malice, or that [Valle] personally premeditated anything." We disagree.

Our Supreme Court has declared that " ' "A defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant. [Citations.]" [Citation.] " '[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' " ' " (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433 (*Bryant et al.*).)

Since appellants' 1993 trial, courts have recognized that the "equally guilty" language in former CALJIC No. 3.00 "could be misleading if the principals in a particular case might be guilty of different crimes and the jury interprets the instruction to preclude such a finding." (*Bryant et al.*, *supra*, 60 Cal.4th at p. 433; *People v. Amezcua and Flores* (2019) 6 Cal.5th 886, 918 (*Amezcua and Flores*).) The instruction was subsequently revised "to address the circumstance that aiders and abettors are not always guilty of *the same crime* as the actual perpetrators." (*Bryant et al.*, at p. 433.) However, as applied in most cases, the court "recognized that the standard instruction 'generally stated a correct rule of law,' in that '[a]ll principals, including aiders and abettors, are "equally guilty" in the sense that they are all criminally liable.' " ([*Bryant et al.*] at p. 433.) (*Amezcua and Flores,* at p. 918.)

12

Here, in order for the jury to impute malice to appellants Valle and Guzman and convict them as aiders and abettors based on the "equally guilty" language in CALJIC No. 3.00, jurors would have had to misinterpret or completely ignore several other instructions. Those instructions required that the jury consider each defendant's guilt separately (CALJIC No. 17.00), find an intent to kill on the part of each defendant individually (CALJIC No. 3.31), and find that each defendant who participated in the murder as an aider and abettor did so with knowledge of the perpetrator's unlawful purpose and acted with his own intent to commit the crime. (CALJIC No. 3.01.)

Given that the jury convicted all three defendants of murder *and* found all three had personally used a firearm in the commission of that murder, there appears no reasonable likelihood that the jury understood the instructions to permit a murder conviction on any theory of imputed malice in this case. (See *Amezcua and Flores, supra,* 6 Cal.5th at p. 918 ["Because the circumstances of this case reflected defendants' joint participation in the offenses at issue with the required intent to kill, the trial court did not err in giving the jury the unmodified CALJIC No. 3.00"].) Not only do " 'we presume jurors *understand* and correlate all of the instructions' [citation]," but the jury is also " 'presumed to have *followed* the court's instructions' (*People v. Sanchez* (2001) 26 Cal.4th 834, 852)." (*Williams, supra,* 86 Cal.App.5th at p. 1256, italics added; *Bryant et al., supra,* 60 Cal.4th at p. 433 [" 'It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions' "]; *People v. McKinnon* (2011) 52 Cal.4th 610, 670 ["We 'credit jurors with intelligence and common sense'

13

[citation] and presume they generally understand and follow instructions"].)

Because neither Senate Bill No. 1437 nor 775 eliminated direct aiding and abetting liability for murder under an implied malice theory, the instructions given at appellants' trial demonstrate appellants are ineligible for relief under section 1172.6 as a matter of law. (*Gentile, supra*, 10 Cal.5th at p. 850; *Cortes, supra,* 75 Cal.App.5th at p. 205.)

**D. *The* Powell, Langi, *and* Loza[8] *decisions are inapposite***

Appellants rely on *Powell, supra,* 63 Cal.App.5th 689, *Langi, supra,* 73 Cal.App.5th 972, and *Loza, supra,* 27 Cal.App.5th 797, to argue that where, as here, the aiding and abetting and implied malice instructions fail to distinguish the perpetrator(s) from the aider and abettor(s), resulting ambiguities in the instructions permit a jury to convict an aider and abettor of implied malice murder by imputing malice to the aider and abettor. These cases do not support appellants' argument.

*1. Powell*

In *Powell*, defendants Powell and Langlois appealed their convictions for second degree murder (§§ 187, subd. (a), 189) and first degree residential burglary (§§ 459, 460). After forcibly entering the victim's home, defendants and two others beat the victim and fled. The victim died from a stab wound to the heart inflicted by Powell. The jury found Powell had personally used a deadly weapon during the commission of the crime (§ 12022, subd. (b)(1)). (*Powell, supra,* 63 Cal.App.5th at p. 692.) The trial

---

[8] *In re Loza* (2018) 27 Cal.App.5th 797 (*Loza*).

14

court instructed the jury with CALCRIM No. 401, aiding and abetting, CALCRIM No. 403, natural and probable consequences, and CALCRIM No. 520, malice. (*Powell*, at pp. 706–708.) The prosecutor argued the jury could convict Langlois of murder on two theories: that he directly aided and abetted an express malice murder, or that he aided and abetted an assault, the natural and probable consequence of which was death. Although the prosecutor did not specifically advance a murder theory based on implied malice as to Langlois, he did explain implied malice murder with respect to "the person who committed the stabbing." (*Id.* at p. 708.)

Langlois contended the court instructed the jury in a manner which permitted the jury to convict him on an invalid theory of murder; that is, as a direct aider and abettor of an implied malice murder independent of the natural and probable consequences doctrine. (*Powell, supra,* 63 Cal.App.5th at p. 709.) The court "reject[ed] Langlois's contention that direct aiding and abetting implied malice murder is an invalid legal theory" in all cases, but nevertheless found the aiding and abetting instructions given in that case were erroneous because they "were not tailored for implied malice murder." (*Id.* at p. 714.)

*Powell* explained that the standard aiding and abetting instruction given (CALCRIM No. 401) described the aider and abettor's intent in terms of aiding and abetting the *crime of murder* rather than "intend[ing] the commission of the perpetrator's *act*, the natural and probable consequences of which are dangerous to human life, intentionally aid[ing] in the commission of that *act* and do[ing] so with conscious disregard for human life." (*Powell, supra,* 63 Cal.App.5th at p. 714, italics added.) The instruction was "not tailored for" aiding and

15

abetting an implied malice murder, and was thus erroneous as applied to Langlois because it did not require "proof of the aider and abettor's knowledge and intent with regard to the *direct perpetrator's* life endangering **act**" as opposed to the **result** of that act, that is, murder. (*Reyes*, *supra,* 14 Cal.5th at p. 991, boldface added, citing *Powell, supra,* at pp. 712–713.)

    2. *Langi*

*Langi* applied the *Powell* court's reasoning to its review of the superior court's denial of a section 1172.6 petition for resentencing. (*Langi, supra,* 73 Cal.App.5th at p. 982 [where a trial court applies the standard aiding and abetting instruction to the crime of second degree murder "without tailoring it to the specifics of that crime, the instruction creates an ambiguity under which the jury may find the defendant guilty of aiding and abetting second degree murder without finding that the defendant personally acted with malice"].)

In *Langi*, the defendant was convicted of second degree murder as an aider and abettor based on his participation in a fistfight among several people, in which the victim died as a result of falling and hitting the back of his head on the pavement after being punched in the face. (*Langi, supra*, 73 Cal.App.5th at pp. 975, 976–977.) On appeal from the summary denial of defendant's section 1172.6 petition, the appellate court determined that the instruction on aiding and abetting (CALJIC No. 3.01) creates an ambiguity in the context of second degree implied malice murder, which may allow the jury to "find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice." (*Langi, supra*, 73 Cal.App.5th at p. 982.)

16

The court explained, "The aiding-and-abetting instruction stated that a person aids and abets a crime if he or she acts '*with knowledge of the unlawful purpose of the perpetrator*, and . . . with the intent or purpose of committing or encouraging or facilitating the commission of the crime.' (CALJIC No. 3.01, italics added.) However, . . . the second degree murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death. . . . If the perpetrator need not have had 'murderous intent,' certainly the aider and abettor need not have had such an intent. Although the definition of second degree murder in CALJIC No. 8.31 states that the perpetrator must have acted with conscious disregard for human life, the definition of an aider and abettor in CALJIC No. 3.01 does not include the same requirement." (*Langi, supra*, 73 Cal.App.5th at pp. 982–983.) In this situation, the ambiguity in the instructions allows an aider and abettor to be found guilty simply for intending to aid the perpetrator's act, without personally and consciously disregarding the danger to human life. (*Id*. at p. 983.)

To avoid this ambiguity, *Langi* declared that "[t]he instructions should have explained that, to be guilty as a direct aider and abettor of second degree murder, an accomplice must have acted with the mental state of implied malice." (*Langi, supra,* 73 Cal.App.5th at p. 983, citing *Powell, supra,* 63 Cal.App.5th at pp. 713–714.) In the absence of such clarification, the theory presented to the jury thus fell within section 1172.6's prohibition on theories of imputed malice, and the defendant was not necessarily ineligible for relief as a matter of law. (*Id.* at p. 984.)

17

Here, the jury was instructed on, and convicted appellant Valle of first degree murder. Therefore, the jury necessarily found Valle committed a "willful, deliberate and premeditated killing *with express malice aforethought*." (CALJIC No. 8.20, italics added.) Because the verdict establishes appellant Valle was not convicted under any theory of imputed malice, *Langi* is inapplicable, and Valle is ineligible for section 1172.6 relief as a matter of law. (See *Coley, supra*, 77 Cal.App.5th at p. 547 [distinguishing *Langi* on the ground that instructions required a finding of express rather than implied malice].)

*Langi* is also distinguishable as applied to appellant Guzman. In *Langi*, no weapons were used. The victim died because he fell and struck his head after someone in the group that included the defendant punched him. (*Langi, supra,* 73 Cal.App.5th at p. 976.) In that context, the *Langi* court found CALJIC No. 3.01 to be ambiguous because the instruction did "not state that the aider and abettor must himself have known that the act he aided was life-threatening, or that he must himself have acted with indifference to human life." (*Langi*, at p. 982.)

In contrast to *Langi*, all three defendants in this case—including Guzman—fired guns in Ortega's murder. The jury found that each defendant—including Guzman—personally used a firearm in the commission of the offense. Although the same aiding and abetting instruction (CALJIC No. 3.01) given in *Langi* was given here, and both juries received instructions on implied

18

malice murder,[9] the ambiguity present in the *Langi* instructions did not arise in this case because Guzman personally used a firearm in the offense, an intentional act which itself demonstrates a conscious disregard for human life.

*Langi* is thus inapposite: Even if the jury convicted Guzman as an aider and abettor of implied malice murder, in light of the jury's verdicts and considering the instructions as a whole, we find no reasonable likelihood that the jury convicted appellants Valle or Guzman of murder on any theory of imputed malice.

### 3. *Loza*

Appellants' reliance on *Loza* is similarly misplaced.

In *Loza*, gang members Loza, Loza's brother Luis, Rizo, Andrade, and Flores attacked members of a rival gang. Loza had a knife, Rizo had a baseball bat, and Flores had a .38-caliber semiautomatic handgun. During the fight, Flores passed his gun to Loza, but it did not work when Loza tried to fire it. Loza passed the gun to Andrade who shot the victim in the chest and killed him. The jury convicted Loza and the other defendants of

---

[9] Here, the trial court instructed with CALJIC No. 8.11, defining implied malice. In *Langi*, the trial court used CALJIC No. 8.31 to instruct the jury "that a killing is a second degree murder if '1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. [¶] When the killing is the direct result of such an act, it is not necessary to prove that the defendant intended that the act would result in the death of a human being.' " (*Langi, supra,* 73 Cal.App.5th at p. 981.)

first degree premeditated murder.  (*Loza, supra,* 27 Cal.App.5th at p. 800.)

The trial court instructed on direct aiding and abetting (CALJIC No. 3.01) as well as a natural and probable consequences theory of aiding and abetting (CALJIC No. 3.02).  On first degree murder, the court instructed:  " 'If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of *the defendant* to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion . . . it is murder of the first degree.'  (CALJIC No. 8.20, italics added.)  The instruction also stated: 'To constitute a deliberate and premeditated killing, *the slayer* must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides to and does kill.'  (CALJIC No. 8.20, italics added.)"  (*Loza, supra,* 27 Cal.App.5th at pp. 802–803.)

Loza challenged his first degree murder conviction in a habeas corpus proceeding under *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*).  (*Loza, supra,* 27 Cal.App.5th at p. 799.)  The *Loza* court found that the trial court's instructions included one legally valid theory of first degree murder—direct aider and abettor liability, and one legally invalid theory—the natural and probable consequences doctrine.  The court explained,  " ' "When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was actually based on a valid ground." ' "  (*Loza,* at p. 803, quoting *Chiu,* at p. 176.)

20

The *Loza* court found no reason to conclude the verdict against Loza was based on the legally valid theory. "[T]he court's instructions here allowed the jurors to find defendant (Loza) guilty of first degree murder if they found that one of the other three defendants—the 'slayer' Andrade—deliberated and premeditated. This is precisely the type of instructional error that our Supreme Court identified and found unacceptable in *Chiu, supra*, 59 Cal.4th 155." (*Loza, supra,* 27 Cal.App.5th at p. 805.) The court determined the error was not harmless beyond a reasonable doubt (see *Chapman v. California* (1967) 386 U.S. 18, 24), and vacated Loza's conviction for first degree murder. (*Loza*, at pp. 803, 808.)

*Loza* has no application to the instant case. Unlike *Loza*, the jury here was not instructed on a natural and probable consequences theory of liability or any other legally invalid theory. Appellants' assertion that this distinction is of no consequence is simply wrong. The sole focus of *Loza*'s analysis was whether the record could support a determination that the jury relied on the legally valid theory rather than the invalid one to convict. As the court explained, "the analysis is on all fours with *Chiu*. In this habeas corpus review, we find no basis in the record to conclude beyond a reasonable doubt that the jury relied on the legally valid (direct aider and abettor) liability theory. (See *In re Martinez* (2017) 3 Cal.5th 1216, 1218 ['on a petition for writ of habeas corpus, as on direct appeal, *Chiu* error requires reversal unless the reviewing court concludes beyond a reasonable doubt that the jury actually relied on a legally valid theory in convicting the defendant of first degree murder'].)" (*Loza, supra,* 27 Cal.App.5th at p. 803.)

21

**E.** *The superior court neither engaged in factfinding nor improperly relied on this court's opinion in the direct appeal in denying the petitions at the prima facie stage*

Appellants contend the superior court improperly referred to the prior appellate opinion and engaged in factfinding in ruling on their section 1172.6 petitions. We disagree.

In *Lewis*, the California Supreme Court declared, "there is no categorical bar to consulting the record of conviction at the prima facie stage [of a section 1172.6 petition]." (*Lewis, supra,* 11 Cal.5th at p. 972, fn. 6.) However, the court cautioned that the permissible scope of the superior court's review of the record of conviction—including the appellate opinion from a direct appeal—is limited. (*Id.,* at pp. 971–972.) While appellate opinions "are generally considered to be part of the record of conviction," their probative value "is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' [Citation.] In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.)

Consistent with *Lewis*, then, the superior court properly reviewed the appellate opinion in considering appellant Guzman's petition. Assuming the superior court that adjudicated appellant Valle's petition also reviewed the prior opinion, that review was proper under *Lewis*.

There is also no merit to appellants' argument that the superior court engaged in factfinding by referring to the prior appellate opinion, or, in appellant Valle's case, referring to the basic facts of the case. Both courts stated clearly and unequivocally on the record that appellants were ineligible for

22

relief under section 1172.6 as a matter of law because the jury in appellants' case was not instructed on the theories of felony murder or natural and probable consequences.

Finally, even if the courts did engage in factfinding, the denials of both appellants' petitions at the prima facie stage were correct as discussed above. As our Supreme Court has recognized, "a ruling will not be disturbed on appeal merely because it was given for a wrong reason, if the ruling would otherwise be correct ' " 'upon any theory of the law applicable to the case,' " ' and ' " 'regardless of the considerations which may have moved the trial court to its conclusion. ' " ' " (*People v. Hopson* (2017) 3 Cal.5th 424, 459.)

## II. Appellant Guzman Had No Constitutional Right to be Present at the Section 1172.6 Eligibility Hearing

Appellant Guzman contends his constitutional right to be present at the prima facie hearing on his petition was violated by the failure to obtain a waiver of his personal presence. The claim lacks merit.

Although "[a] criminal defendant has the right under the state and federal Constitutions to be personally present and represented by counsel at all critical stages of the trial" (*Bryant et al., supra,* 60 Cal.4th at p. 465), that right is subject to certain recognized limitations. (*People v. Simms* (2018) 23 Cal.App.5th 987, 996.) For example, "it is well established that a represented defendant has no constitutional or statutory right to be present to address purely legal questions or where his or her 'presence would not contribute to the fairness of the proceeding.' " (*People v. Fedalizo* (2016) 246 Cal.App.4th 98, 109; *People v. Perry* (2006) 38 Cal.4th 302, 312 ["a defendant's right to be present depends on

two conditions: (1) the proceeding is critical to the outcome of the case, and (2) the defendant's presence would contribute to the fairness of the proceeding. [Citations.] Thus a defendant may ordinarily be excluded from conferences on questions of law, even if those questions are critical to the outcome of the case, because the defendant's presence would not contribute to the fairness of the proceeding"].)

In the context of a prima facie hearing on a petition for resentencing under section 1172.6, the superior court is prohibited from engaging in factfinding or exercising discretion on any matter. (*Lewis, supra,* 11 Cal.5th at pp. 972, 974 ["at the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion' "].) Thus, because the only issue at stake in the prima facie hearing on a section 1172.6 petition is whether the petitioner may be eligible for relief *as a matter of law*, Guzman had no constitutional right to be personally present at the hearing in this case.

## DISPOSITION

The orders denying appellant Valle's and appellant Guzman's petitions for resentencing under Penal Code section 1172.6 are affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.